UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

KAREN TUCKER,

        Plaintiff,

    -v-                                No. 13CV1576-LTS-RLE

WYCKOFF HEIGHTS MEDICAL CENTER
and RONALD GUBERMAN,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        <u>Pro se</u> plaintiff Karen Tucker ("Plaintiff") brings this action against Wyckoff

Heights Medical Center ("Wyckoff"), located in Brooklyn, NY, and Dr. Ronald Guberman ("Dr.

Guberman," and together, "Defendants").  Plaintiff asserts claims of breach of contract, Title VII

retaliation, defamation, and tortious interference with prospective business relations.

        On motion papers supplemented by a copy of a contract between Plaintiff and

Wyckoff Hospital, Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6)

for an order dismissing the complaint.  In accordance with Federal Rule of Civil Procedure 12(d)

and Southern District of New York Local Civil Rule 56.2, Defendants served a written notice on

Plaintiff explaining that the Court could treat the motion as one for summary judgment pursuant

to Federal Rule of Civil Procedure 56 and that, in order to oppose such a motion, she was

required to respond with evidence in the form of affidavits and/or documents.  (Docket entry no.

16.)  Plaintiff responded to the motion with, <u>inter alia</u>, a request to amend her complaint and for

other relief, a one-page Affirmation in Opposition to Motion, a one-page Reply Affirmation in

Support of Motion, a 40-page statement of facts and legal argument, the factual assertions in

which the Court deems for purposes of this motion practice to have been proffered as sworn statements, and eleven attachments denominated as exhibits and comprising approximately 60 pages of additional material.  (See docket entry nos. 30, 30-1, 30-2, 30-3, and 30-4.[1])  The Court treats Defendants' motion as one for summary judgment.

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.  The Court has considered parties' submissions carefully,[2] and, for the following reasons, Defendants' motion for summary judgment dismissing the complaint is granted as discussed herein,  and Plaintiff's request for leave to amend the complaint is denied as futile.

BACKGROUND[3]

Plaintiff was a resident in Wyckoff's Podiatric Medicine and Surgery 12 Month Program (the "PM&S12 Program") from July 1, 1993 to June 30, 1994.  (Docket entry no. 30-1, at 17.[4])  Plaintiff was thereafter accepted into the Podiatric Medicine and Surgery 24 Month Program (the "PM&S24 Program") at Wyckoff, which required her to be in residence from July 1, 2007 to June 30, 2008.  (Id. at 16.)  Plaintiff worked in the program until March 2008. (Docket entry no. 17-2 at ¶ 5.)

On June 12, 2008, Plaintiff filed a complaint with the New York District Office of

---

[1]     Docket entry numbers cited herein reference the Federal Judiciary's Electronic Case Filing ("ECF") system numbers associated with the documents as filed under the above-captioned case number.

[2]     The Court has reviewed Plaintiff's requests for oral argument and finds that oral argument is not necessary.

[3]     The following facts are drawn from Plaintiff's complaint and from materials filed by Plaintiff in opposition to Defendants' motion for summary judgment.  The facts are undisputed except to the extent they are characterized as allegations.

[4]     Page references associated with docket entry numbers denote the page numbers assigned to the filing by the ECF system.

the Equal Employment Opportunity Commission (the "EEOC"), captioned <u>Karen Tucker v.</u>
<u>Wyckoff Heights Medical Center</u> (EEOC Charge No. 520-2008-04231).  (Docket entry no. 30, at
8.)  In 2008, Plaintiff commenced an action captioned <u>Karen Tucker v. Mary Immaculate</u>
<u>Hospital, Wyckoff Heights Medical Center, Brooklyn Health Care Inc., Nirmal Matto, Fred</u>
<u>Eisgrub, Charles Lombardi DPMI, Lida Faroqi DPMI, Anand Patel DPMI and Monique Rolle,</u>
<u>DPM</u>, No. 09 CV 10040, in this Court, and the Committee of Interns and Residents (the "CIR")
commenced an arbitration proceeding on behalf of Plaintiff entitled <u>Committee of Interns &</u>
<u>Residents v. Wyckoff Heights Center (Termination of Karen Tucker)</u>, AAA Case No. 13 300
01338 08.  (<u>Id.</u>; Agreement, at 1.)

       On December 3, 2008, Plaintiff signed a Settlement Agreement and Release (the
"Agreement" (Ex. B to Defendants' Notice of Motion, docket entry no. 17-2, and also attached
to Plaintiff's Opposition, docket entry no. 30-1, at 19-27)) with Wyckoff and the CIR which
purported to resolve all outstanding claims concerning Plaintiff's employment at, and
termination from, Wyckoff, including all of Plaintiff's claims raised in the arbitration, the federal
litigation, and the complaint filed with the EEOC.  (Agreement, at ¶ 1.)  Plaintiff and the CIR
agreed to withdraw all of their previously filed claims.  (Agreement, at ¶ 2.)  Wyckoff agreed
"that Plaintiff will be considered to have resigned from its Podiatry residency program effective
March 31, 2008."  (Agreement, at ¶ 4.)  Wyckoff agreed that, if a third party inquired, Wyckoff's
employees would state that Plaintiff had resigned for personal reasons.  (Agreement, at ¶ 4.)

       Plaintiff agreed to:

> release[] and forever discharge Wyckoff . . . and . . . [its] parent institutions,
> subsidiaries, . . . affiliated institutions, predecessors and successors . . . as well
> as . . . their respective current or former . . . officers, . . . representatives or
> employees, including . . . Dr. Ronald Guberman . . . (collectively, 'Wyckoff
> Releasees'), from any and all complaints, claims, charges, demands, suits or
> actions, whether known or unknown, in law or in equity, which Tucker . . . now

has or hereafter can, shall or may have against any of the Wyckoff Releasees, in
their individual or representative capacity, arising out of her employment at
Wyckoff, any event occurring during her employment, her termination, or any
event occurring from the beginning of the world to the date of the Agreement.

(Agreement, at ¶ 8.)

Plaintiff agreed not to pursue any other charges, complaints, or claims of any

nature against Wyckoff or any of the Wyckoff Releasees and, in particular, that she would not

bring any civil or criminal claim against any of the Wyckoff Releasees in their individual or

professional capacity.  (Agreement, at ¶ 9.)  Plaintiff also agreed that she would not seek

employment or reemployment with Wyckoff or with any Wyckoff affiliate.  (Agreement, at

¶ 16.)

The Agreement includes a choice of law clause and a forum selection clause

reading as follows:

This Agreement shall be construed and interpreted in accordance with the laws of
the State of New Jersey without regard to its conflict of laws provisions.  The
parties hereby agree to submit to the jurisdiction of the courts of the State of New
Jersey and any actions relating to this Agreement must be instituted in the courts
of the State of New Jersey.

(Agreement, at ¶ 22.)

The Agreement recites that it was a result of compromise and was entered into in

good faith, and that it represents and contains the entire agreement and understanding with

respect to the subject matter of the Agreement.  (Agreement, at ¶ 18.)  The Agreement includes

Plaintiff's acknowledgment that she understood the terms and effect of the Agreement and

signed it voluntarily, knowingly, and with advice of counsel.  (Agreement, at ¶ 19.)

The Agreement further provides that, "[i]n the event of any inquiry from a third-

party regarding Plaintiff, Wyckoff agrees that, subject to its legal obligation, it will provide a

document and certification attesting to the rotations and procedures which Plaintiff performed

while she was working as a Podiatric Resident at Wyckoff from July 1993 to June 1994 and

from July 2007 to March 2008."  (Agreement, at ¶ 5.)  The Agreement, which was signed by

Plaintiff and by representatives of Wyckoff and the CIR, further provided that Dr. Guberman,

who was the Director of the Podiatric Residency Program, would, for 12 months from the

execution of the Agreement, "make a good faith effort to provide documentation that satisfie[d]

the requirements of the programs to which [Plaintiff was] applying, subject to all legal

obligations," and that Dr. Guberman would provide Plaintiff with a letter of reference in a form

annexed to the Agreement, attesting to her medical competency.  (Agreement, at ¶¶ 5-6.)

On April 9, 2009, Plaintiff requested that Dr. Guberman provide her with a letter

of recommendation, verification of her rotation completion for the rotations she claims were

completed between 1993 and 1994 and also between 2007 and 2008, verification of podiatric

logs, and rotation evaluation signatures in his role as director of the PM&S24 Program.  (Docket

entry no. 30-3, at 27.)  Plaintiff received the signed logs and evaluations for the rotations she

completed between 2007 and 2008.  (Docket entry nos. 30-3, at 28-42 and 30-4, at 1-4.)

Plaintiff acknowledges in her opposition papers that her employment with

Wyckoff terminated in March 2008.[5]  (Docket entry no. 30-2, at 18.)  Plaintiff, however, relies in

her Complaint on certain letters, postdating the date the Agreement was executed, as proof that

she is entitled to a certificate of completion of the PM&S24 Program.  (See docket entry no. 2, at

3, 7-9.)  The first is a letter by Dr. Guberman, dated April 24, 2009, attesting to Plaintiff's

excellent grasp of hospital protocol and care of podiatric patients in inpatient and clinical

---

[5]     Plaintiff alleges that Charles Lombardi made certain false allegations, and attempted
to "have discriminatory rules inflicted upon [Plaintiff] that included none of the 30
other Residents," and which led to her termination.  (Docket entry no. 30-2, at 18.)

settings.  (Docket entry no. 2, at 9.[6])  Plaintiff also relies on two additional letters signed by Dr. Guberman, each dated July 1, 2009.  The first July 1 letter states that Plaintiff was a resident in the PM&S12 Program from July 1, 1993 to June 30, 1994.  (Docket entry no. 2, at 8.)  The second July 1 letter states that she was a resident in the PM&S24 Program from July 1, 2007 to June 30, 2008.  (Docket entry no. 2, at 7.)  On the basis of the second letter's reference to a full one-year term of the PM&S24 Program, Plaintiff argues that "Dr. Gruberman made a well-informed conscious decision to grant [Plaintiff] her completion of her PM&S24 residency training certificate for PM&S24."  (Docket entry no. 30, at 10.)  Plaintiff characterizes this second July 1, 2009 letter as a "letter of completion" from Dr. Guberman.  Plaintiff asserts that this "letter of completion" entitles her to a certificate of completion of the PM&S24 Program.  (Docket entry no. 30, at 17-18.)  Plaintiff also alleges in her Complaint that Dr. Guberman "signed off on all her clinical, medical, surgical, and rotation evaluation logs as successfully completed."  (Docket entry no. 2, at 3.)  Plaintiff has not proffered any documentary evidence of such program completion.  She attached to her opposition records, signed by Dr. Guberman, demonstrating that she completed certain rotations from July 2007 to March 2008.  (Docket entry nos. 30-3, at 28-42; 30-4, at 1-4.)  Moreover, the Agreement states explicitly that Plaintiff was part of the PM&S24 Program only from July 2007 to March 2008.  (Agreement, at ¶ 5.)

Plaintiff further alleges that Wyckoff's refusal to issue a completion certificate or permit her to reenter and complete the Wyckoff residency program has prevented her from gaining employment and entering other programs.  She alleges that, on March 31, 2011, she spoke with Dr. Falcone, a residency director at Interfaith Medical Center, regarding an open

---

[6]   The text of the letter is consistent with the form of recommendation called for by the Agreement.  (See docket entry no. 17-1, at ¶ 6 and Ex. A.)

resident position for which she had applied.  Plaintiff alleges that Dr. Falcone told her that Dr.

Guberman stated that his reason for not allowing Plaintiff to return to WHMC or for not issuing

her a certificate was because Plaintiff had sued him.  Plaintiff alleges that she did not get the

position with Interfaith.  (Docket entry no. 30, at 28.)

Plaintiff proffers that, on June 18, 2012, she received an e-mail from Dr. Haber,

who the Court assumes was a representative of a prospective employer, stating:

> in order to complete your residency you have to follow the procedures as defined in
> the CPME documents, there is no program that can take a resident to finish a few
> months without having all the proper paperwork.  Hospitals do not want any
> liability, until you get your situation worked out at Wyckoff there is nothing I or my
> hospital can do.

(Docket entry no. 30-1, at 32.)

Plaintiff alleges that, on August 3, 2012, Dr. Guberman sent an e-mail to Dr.

Gudeon, who the Court assumes is also a representative of a prospective employer, stating:

> Hi Doc! Great to hear from you.  I just tried your office which was closed so I will
> give you the Readers Digest version, but please give me a call as well to talk etc.:
> As far as Karen, I would love to be able to see her get the certificate and I have had
> numerous calls from other programs over the years where I thought she might
> enroll to do so and I have supported this strongly.  Unfortunately, due to
> circumstances beyond my control she did not complete her program and this was
> when I was not director so there is no way I can legally give her a completion
> certificate.  If I could, I would.  Talk to you soon.  Ron.

(Docket entry no. 30-1, at 31.)

Dr. Gudeon, in response, allegedly e-mailed Plaintiff stating:

> I heard from Dr. Guberman, and although he very much sympathizes with your
> situation, he unfortunately cannot be the one to certify you, as he was not the
> program director at the time you were there.  You'd probably have to get in contact
> with the former director to be certified and/or recommended by him for another
> program to finish up your last two months at if necessary.

(Docket entry no. 30-1, at 30.)

Plaintiff alleges that Dr. Guberman's email is "defamatory, [contained] false

statements, fraudulent and negligent misrepresentation with reckless disregard for the truth."
(Docket entry no. 30, at 7.)

Plaintiff alleges that Defendants made false statements regarding Plaintiff's employment record to Dr. Craig Campbell, a physician at Staten Island Hospital, who had invited Plaintiff to apply to work in the hospital.  (Docket entry no. 30, at 27.)  She proffers that she spoke to a Dr. Fernando, residency director at Staten Island Hospital, who rejected her application and allegedly said that he had done so because he knew Dr. Guberman did not recommend her for additional residency training and that Dr. Fernando would never hire her.  (Id. at 27.)  Plaintiff alleges that she spoke with residency directors at Kennedy Hospital in Strafford, NJ, and a residency director at Virtua West Jersey, who said they were informed by Defendants that Plaintiff had been fired from the PM&S24 Program.  (Id.)

Plaintiff further alleges that Defendants' actions prevented her from obtaining employment at Metropolitan Hospital, in a position which remained open after she was rejected. (Id. at 26.)  Plaintiff also alleges that the Defendants breached the Agreement and, without citing any legal authority, asserts that such breach renders the Agreement "moot."  (Id. at 7.)

On March 3, 2013, Tucker filed the instant complaint, asserting claims of retaliation, defamation, tortious interference with prospective business relations, and tortious interference with prospective contractual relations.

DISCUSSION

Summary judgment will be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Conversely, summary judgment will be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A fact is

considered material "if it might affect the outcome of the suit under the governing law," and an

issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." <u>Holtz v. Rockefeller & Co. Inc.</u>, 258 F.3d 62, 69 (2d Cir. 2001)

(quoting <u>Anderson</u>, 477 U.S. at 248).  The Second Circuit has held that "[t]he party against whom

summary judgment is sought . . . must do more than simply show that there is some metaphysical

doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts

showing that there is a genuine issue for trial." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir.

2002) (quoting <u>Matsushita Elec. Indus. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986)).

      "<u>Pro se</u> litigants are entitled to a liberal construction of their pleadings and therefore

their complaints should be read to raise the strongest arguments they suggest." <u>Torres v. Colvin</u>,

No. 12CV6527, 2014 WL 241061, at *8 (S.D.N.Y. Jan. 22, 2014) (internal quotation marks

omitted).  "Nonetheless, a <u>pro se</u> complaint must state a plausible claim for relief." <u>Walker v.</u>

<u>Schult</u>, 717 F.3d 119, 124 (2d Cir. 2013).

      Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely

give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "It is settled

that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the

trial court." <u>SCS Commc'ns, Inc. v. Herrick Co.</u>, 360 F.3d 329, 345 (2d Cir. 2004) (quoting <u>Zenith</u>

<u>Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330 (1971)).  However, "leave to amend a

pleading may only be given when factors such as undue delay or undue prejudice to the opposing

party are absent." <u>Herrick Co.</u>, 360 F.3d at 345 (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

Where "there is no merit in the proposed amendments, leave to amend should be denied." <u>Health-</u>

<u>Chem Corp. v. Baker</u>, 915 F.2d 805, 810 (2d Cir. 1990) (citing <u>Friedman v. Chesapeake & Ohio</u>

<u>Ry. Co.</u>, 261 F. Supp. 729, 734 (S.D.N.Y. 1966)).  Courts may, therefore, consider the "futility of

amendment" when denying a request to amend the complaint.  See Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).

At their core, Plaintiff's claims are based on the assertion that she is entitled to a certificate of completion for a program that she never actually completed.  The sole "evidence" of her completion of the program is a letter from Dr. Guberman in which he refers to her having been a resident in the program for the 2007-2008 academic term but does not state that she completed the program.  Defendants seek dismissal of her claims as barred by the Agreement, and also argue that none of her claims is supported by evidence sufficient to satisfy her burden of proof.  For the following reasons, Defendants are entitled as a matter of law to summary judgment dismissing Plaintiff's complaint, and Plaintiff's request for leave to amend the complaint is denied as futile.

Impact of Release and Covenant Not to Sue

Defendants, invoking the Agreement, argue that the Complaint is barred in its entirety by the release and covenant not to sue, which Defendants read to cover all prospective litigation against them and their affiliates.  Plaintiff alleges that she entered into the Agreement under duress or that she was fraudulently induced to enter into it and should be relieved from its provisions on that basis.  Plaintiff also claims that Defendants' alleged breach of the Agreement renders it "moot" and unenforceable.  While Defendants' reading of the Agreement is too broad, the Agreement does bar certain of Plaintiff's claims.  Plaintiff has failed to demonstrate that enforcement should be denied on grounds of duress, fraudulent inducement, breach, or mootness.

"Under the law of New York, a settlement agreement in writing between parties represented by counsel is binding and, essentially, a contract.  As such, it is subject to the rules governing the construction of contracts."  Bank of New York v. Amoco Oil Co., 35 F.3d 643, 661 (2d Cir. 1994) (internal citations and quotation marks omitted).

Invalidation of a contract for fraudulent inducement requires that the plaintiff prove, among other things, misrepresentation of a material fact by the defendant.  Sheng v. Time Warner Cable of New York City, No. 09CV10397, 2010 WL 3292681, at *4 (S.D.N.Y. June 29, 2010), report and recommendation adopted, 2010 WL 3292680 (S.D.N.Y. Aug. 18, 2010).

A party claiming that she was induced to enter a contract as a result of duress must show: (1) a threat, (2) unlawfully made, (3) which caused involuntary acceptance of contractual terms, (4) because the circumstances permitted no alternative.  Industrial Recycling Systems, Inc. v. Ahneman Associates, 892 F. Supp. 547, 549 (S.D.N.Y. 1995).  To prove duress, a plaintiff must demonstrate that the difficult situation or decision she confronted was a product of the defendant's actions.  Mazurkiewicz v. N.Y.C Health & Hosps. Corp., 585 F. Supp. 2d 491, 500 (S.D.N.Y. 2008).  A duress defense is evaluated according to an objective standard.  Eisenstein v. Kelly Music & Entertainment Corp., No. 97CV4649, 1998 WL 289734, at *4 (S.D.N.Y. June 4, 1998).

Plaintiff has not alleged sufficient facts to support a finding that she should be relieved from her obligations under the Agreement because she signed under duress.  Plaintiff acknowledged that she signed the Agreement after consulting counsel.  The Agreement includes a provision that it was the result of a compromise of the parties' positions based on good faith and that the parties entered into it "knowingly and voluntarily."  Plaintiff's sole allegation regarding fraudulent inducement or duress appears to be an allegation in her opposition papers that "the arbitration contract was induced by lies, under duress that he [Dr. Guberman] was the only person in the program that was willing to help Dr. Tucker."  (Docket entry no. 30-1, at 6.)  Even when read in the light most favorable to Plaintiff, this does not demonstrate that she was placed unlawfully in a position in which she had no alternative but to sign the contract, nor has Plaintiff identified any material misrepresentation of fact.  Plaintiff's assertions that the

Agreement is unenforceable due to alleged breaches thereof, and that it is "moot," are similarly

lacking in factual and legal foundation.  The Court will, accordingly, apply the contract in

accordance with its terms insofar as it is relevant to the instant motion practice.

The Court now turns to Defendant's argument that the release and covenant not to

sue provisions of the Agreement bar Plaintiff's claims in their entirety.  The Agreement provides

that it is to be interpreted under the law of New Jersey, without regard to conflicts of law.

(Agreement, at ¶ 22.)  The Court therefore applies New Jersey law in evaluating Defendants'

arguments concerning the impact of the release and covenant not to sue provisions of the

Agreement.  "[A]n agreement to settle a lawsuit is a contract which, like all contracts, may be

freely entered into and which a court, absent a demonstration of fraud or other compelling

circumstances, should honor and enforce as it does other contracts."  Borough of Haledon v.

Borough of N. Haledon, 358 N.J. Super. 289, 305, 817 A.2d 965, 975 (App. Div. 2003).  New

Jersey law holds that releases of a party's claims are valid when the terms are clear and

unambiguous.  Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191, 814 A.2d 1108, 1112 (App.

Div. 2002).  "A general release extinguishes all claims the released party owes to the releasor."

Grow Co. Inc. v. Chokshi, 2006 WL 3783522, at *4 (N.J. Super. Ct. Ch. Div. Dec. 22, 2006).

The Agreement releases Defendants, along with others at Wyckoff, from:

> any and all complaints, claims, charges, demands, suits or actions, whether known
> or unknown, in law or in equity, which [Plaintiff] or the CIR now have or
> hereafter can, shall, or may have against any of the Wyckoff Releasees, in their
> individual or representative capacity, arising out of [Plaintiff's] employment at
> Wyckoff, any event occurring during her employment, her termination, or any
> event occurring from the beginning of the world to the date of this Agreement.

(Agreement, at ¶ 8.)  The Agreement's release provision is clear and unambiguous.  It serves as a

general release of all claims that Plaintiff had against Defendants at the time of the Agreement.

Therefore Plaintiff's claims, to the extent they arise from events prior to the date on which the

Agreement was signed on December 3, 2008, including Plaintiff's allegations of wrongful conduct by Dr. Lombardi in connection with her termination, are barred and must be dismissed with prejudice.

Defendants assert that the covenant not to sue in the Agreement, in which Plaintiff promises "that she will not hereafter bring any civil or criminal claim against any of the Wyckoff Releases, in their individual or professional capacity," bars all of her claims regardless of whether they were contemplated at the time the Agreement was signed.  Defendants' interpretation would preclude wholly unrelated causes of action, and even litigation to enforce the Agreement, a result that is clearly inconsistent with the litigation venue provisions of the Agreement itself.  The Court will not read the agreement so broadly.  Cf. Nat'l Helicopter Corp. of Am. v. City of New York, 137 F.3d 81, 87 (2d Cir. 1998) ("[A] release should not be read to include matters of which the parties had no intention to dispose.").  The Court rejects Defendants' contention that Plaintiff's claims accruing after the Agreement are barred.  As explained below, however, the remainder of Plaintiff's claims fail on the merits.

Plaintiff's Retaliation Claims

Plaintiff alleges that Defendants retaliated against her for filing employment related complaints by denying that she completed the PM&S24 Program and by refusing to provide a certificate of completion for the PM&S24 Program.

To prevail on a Title VII retaliation claim, a plaintiff must establish a prima facie case of retaliation by demonstrating: "(1) his participation in protected activity; (2) defendant's knowledge thereof; (3) materially adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 567-68 (2d Cir. 2011) (citing Hicks v. Baines, 593 F.3d

159, 164–65 (2d Cir. 2010)).  "Title VII . . . prohibits an employer from taking 'materially

adverse' action against an employee because the employee opposed conduct that Title VII

forbids or the employee otherwise engaged in protected activity."  Tepperwien, 663 F.3d at 567

(citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56-59 (2006)).  "The

antiretaliation provision protects an individual not from all retaliation, but from retaliation that

produces an injury or harm . . . . [A] plaintiff must show that a reasonable employee would have

found the challenged action materially adverse, 'which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination.'"

Burlington, 548 U.S. at 67–68.  "Title VII retaliation claims must be proved according to

traditional principles of but-for causation," which "requires proof that the unlawful retaliation

would not have occurred in the absence of the alleged wrongful action or actions of the

employer."  Univ. of Tex. SW Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

   Plaintiff has alleged no facts to support a finding that there was a but-for causal

connection between her protected activity, namely her complaints to EEOC and others

concerning working conditions and/or her termination, with a material adverse employment

action.  Plaintiff argues that Defendants refused to certify her completion of the PM&S24

Program in retaliation for her EEOC complaint.  Plaintiff has, however, failed to proffer

evidence showing that she is entitled to the completion certificate.  The only document that

Plaintiff proffers to support her argument that she was entitled to receive the certificate of

completion is Dr. Guberman's July 1, 2009 letter stating, apparently erroneously, that she had

participated in the PM&S24 Program from July 1, 2007 to June 30, 2008.  The letter in no way

states that she completed the program or was entitled to any certificate of completion.

Moreover, in the Agreement, Plaintiff acknowledged that she was terminated from the PM&S24

Program, that she left the program in March 2008, and that she released any claims related to that termination.  She cannot, therefore, demonstrate that she would have received the certificate of completion had Defendants not retaliated against her.

Plaintiff also argues that the decision to declare her ineligible for future employment with Wyckoff was retaliatory.  However, the settlement Agreement includes a provision stating that Plaintiff agreed not to apply for future employment with Wyckoff.  Any claim that Wyckoff's failure to allow her to complete her residency after the execution of the Agreement was retaliatory must be dismissed as it is clear that Plaintiff agreed to that limitation, precluding any demonstration that retaliation was the but-for cause of Wyckoff's refusal to re-employ her.

Defendants are, accordingly, entitled as a matter of law to summary judgment dismissing Plaintiff's retaliation claims.

Plaintiff's Defamation Claims

Plaintiff alleges that Dr. Guberman published certain defamatory statements that have damaged her career as a doctor.  She alleges that, sometime in 2011, Dr. Guberman told certain doctors that Plaintiff had been terminated by Wyckoff.  Defendant asserts, correctly, that her defamation claims are barred by the statute of limitations insofar as they are based on communications made more than one year before this action was commenced.

"Under CPLR § 215(3), a claim for libel must be asserted within one year of the date on which the libelous material first was published, that is, displayed to a third party."  Hanly v. Powell Goldstein, L.L.P., 290 F. App'x 435, 439 (2d Cir. 2008) (citing Gelbard v. Bodary,

706 N.Y.S.2d 801, 802 (2000)).[7] Furthermore, a later discovery of published defamatory material does not toll the one-year statute of limitations. <u>Teneriello v. Travelers Cos.</u>, 641 N.Y.S.2d 482, 483 (App. Div. 4th Dep't 1996) ("Contrary to plaintiff's contention, the action accrued when the statements were originally published in 1991, not upon plaintiff's discovery of the statements two years later." (citations omitted)).

Plaintiff filed this action on March 3, 2013.  Thus, any claims for defamation prior to March 3, 2012, are time barred and must be dismissed.  The Court turns to the remainder of Plaintiff's defamation claims.

Plaintiff alleges that Dr. Guberman sent certain e-mails to Dr. Gudeon, allegedly a potential employer of Plaintiff, in June and August 2012, writing that "[u]nfortunately, due to circumstances beyond my control [Plaintiff] did not complete her program and this was when I was not director so there is no way I can legally give her a completion certificate."  Plaintiff also alleges that, at an unspecified time, Dr. Guberman told other doctors that she had been terminated from the PM&S24 Program and that he would not recommend her for residency.

A plaintiff must plead four elements to state a claim of defamation:  (1) a false and defamatory statement concerning the plaintiff; (2) publication by the defendant of such a statement to a third party; (3) fault on the part of the defendant; and (4) injury to the plaintiff. <u>Campos v. Lemay</u>, No. 05CV2089-LTS, 2007 WL 1344344, at *4 (S.D.N.Y. May 7, 2007).

---

[7]     A federal court sitting in a diversity case applies the choice of law rules of the forum state. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  Under New York law, the court must apply the law of the state with the "most significant interest in the case." <u>See</u> <u>Celle v. Filipino Reporter Enterprises Inc.</u>, 209 F.3d 163, 175 (2d Cir. 2000).  Here, most, if not all, of the alleged defamatory communications appear to have been made in or from New York, and Plaintiff has alleged harm largely in New York.  The Court therefore applies New York law in evaluating the sufficiency of Plaintiff's tort claims.

Specifically, a defamatory statement is one that "exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace," or one that would "induce[] an evil opinion of one in the minds of right-thinking persons," and that deprives the plaintiff of "confidence and friendly intercourse in society." Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 177 (2d Cir. 2000).  On the other hand, statements of opinion are not defamatory; instead, they receive "absolute protection" under the New York Constitution.  Egiazaryan v. Zalmayev, 880 F. Supp. 2d 494, 503 (S.D.N.Y. 2012) (quoting Celle, 209 F.3d at 178)).  Additionally, statements that are substantially true are not defamatory, because "[w]hen the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done."  Fleckenstein v. Friedman, 266 N.Y. 19, 23 (1934) (quoting Cafferty v. S. Tier Pub. Co., 226 N.Y. 87, 93 (1919)).  Therefore,"[i]t is only necessary that the gist or substance of the challenged statements be true" to render them non-defamatory.  Printers II, Inc. v. Professionals Pub., Inc., 784 F.2d 141, 146 (2d Cir. 1986).

Plaintiff's remaining defamation claims fail because the record demonstrates that the challenged statements were substantially true or were expressions of opinion.

Dr. Guberman's alleged statements to other doctors that he would not recommend Plaintiff for residency programs appears to have communicated his intention accurately and, insofar as a refusal to recommend is a refusal to give a positive evaluation, they concern protected expression of opinion.

Plaintiff's allegation that Dr. Guberman told Dr. Gudeon and others that she had not completed the PM&S24 Program, and that he could not certify her completion of the program, is an apparently truthful statement consistent with the documents that Plaintiff has

tendered in opposition to the motion for summary judgment and in support of her motion to amend the complaint.  The Agreement confirms that Plaintiff did not finish the program, and makes it clear that her purported resignation is a cover story.  Plaintiff does not dispute the factual accuracy of the recitations in the Agreement.

Plaintiff has thus failed to state a viable claim for defamation.

Plaintiff's Tortious Interference Claims

Plaintiff's charge of tortious interference with prospective economic advantage appears to be premised on the Defendants' communications with her prospective employers.  Plaintiff alleges, in substance, that she had prospective employers who refused her employment when they discovered through Dr. Guberman that she had not completed her residency.[8]

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'"  Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)).

"The New York Court of Appeals has explained that, 'as a general rule, a defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage."  Friedman v. Coldwater Creek, Inc., 321 F. App'x 58, 60 (2d Cir. 2009) (citing Carvel Corp., 3 N.Y.3d at 190)).  Nevertheless, a

---

[8]    To the extent Plaintiff claims that Defendants' decision not to allow her to rejoin and complete the PM&S24 Program was wrongful, her claim is meritless, as she clearly waived in the Agreement any right to apply for employment with Wyckoff and any liability Defendants would have for denying her employment.  (See Agreement, at ¶ 16.)

defendant who acted out of malice may be held liable, notwithstanding failure to allege a separate tort or criminal violation, if he used "wrongful means," including violence, fraud, misrepresentation, civil suits, and criminal prosecutions.  Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191 (1980).

To establish causation, a plaintiff must show that she "would have entered into an economic relationship but for the defendant's wrongful conduct."  Memnon v. Clifford Chance US, LLP, 667 F. Supp. 2d 334, 349 (S.D.N.Y. 2009).

Plaintiff's claims for tortious interference fail because she has not alleged facts that could support a finding that the Defendants acted solely out of malice, or used dishonest, unfair or improper means.  Merely truthfully responding to information requests, stating that Plaintiff had not completed her residency in the PM&S24 Program, is insufficient to demonstrate malice.

Plaintiff also fails to demonstrate that, but for Defendants' interference with the doctors from whom she sought employment, she would have been hired.  Plaintiff admits that she did not complete the PM&S24 Program, and concern over her completion of a residency program appears to be the chief focus of her prospective employers.  For example, Plaintiff alleges that "Dr. Guberman did intentionally disrupt and induce Dr. Gudeon and Dr. Haber to withdraw their contract and communications with Plaintiff due to Dr. Guberman failing to certify her documents."  (Docket entry no. 30, at 9.)  Plaintiff's contention that she would have been employed but for the statements of Dr. Guberman are inconsistent with her allegation that it was Dr. Guberman's failure to certify her completion of the residency program that caused potential employers to withdraw their offers.  She has proffered no evidence that, had Dr.

Guberman said nothing to her potential employers, she would have been able to procure a valid certificate of completion of her residency and obtain employment.

Plaintiff's Claims for Breach of Fiduciary Duty

Plaintiff's claims for breach of fiduciary duty fail because she has not alleged facts indicative of the existence of any fiduciary duty toward her on the part of Defendants.  "A fiduciary relation exists between two persons when one of them is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation."  Mandelblatt v. Devon Stores, Inc., 521 N.Y.S.2d 672 (App. Div. 1st Dep't 1987).  Indicators of a fiduciary relationship include "1) [t]he vulnerability of one party to the other which 2) results in the empowerment of the stronger party by the weaker which 3) empowerment has been solicited or accepted by the stronger party and 4) prevents the weaker party from effectively protecting itself."  Langford v. Roman Catholic Diocese of Brooklyn, 677 N.Y.S. 2d 436, 438 (Sup. Ct. Kings Co. 1998), aff'd, 705 N.Y.S. 2d 661 (App. Div. 2d Dep't 2000).  New York courts look first to whether there is a contractual relationship between the parties and, "where parties have entered into a contract, courts look to that agreement 'to discover . . . the nexus of [the parties'] relationship and the particular contractual expression establishing the parties' interdependency.'" EBC I, Inc. v. Goldman Sachs & Co., 5 N.Y. 3d 11, 19–20 (2005).

Even construing her claims liberally, Plaintiff makes no allegation that could support a finding that she was in a fiduciary relationship with any of the Defendants following the execution of the Agreement.  The relationship appears to have been governed solely by the Agreement, which essentially ended any prior relationship and even barred communication between Plaintiff and Defendants, except for purposes of Dr. Guberman providing Plaintiff with a letter of recommendation.  No relationship of trust or advice was established under the

Agreement, and there was no interdependency established by the Agreement.  Therefore, Plaintiff's fiduciary breach claims must be dismissed.

Plaintiff's Constitutional Claims

Plaintiff cited various provisions of the United States Constitution as a jurisdictional basis for her claims, but does not mention them again in her Complaint.  The Court construes these references as an attempt to plead claims under 42 U.S.C. § 1983.  Plaintiff's Complaint and supplemental submission fail, however, to allege any facts that could support findings of action under color of state law.  See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.").  To the extent Plaintiff asserts any claims under section 1983, they will be dismissed.

Plaintiff's Requests for Leave to Amend the Complaint

The Court construes Plaintiff's extensive submissions, in which she proffers factual support for her claims for breach of contract, fraudulent representation, and negligent representation, in opposition to Defendants' motion for summary judgment, as a request for leave to amend her complaint.[9]  As discussed above, while leave to amend should be granted freely when justice so requires, it is inappropriate to grant leave where a plaintiff's proposed amendments are meritless and thus the amendment would be futile.

---

[9] In fact, Plaintiff mentions amendment to her complaint in her opposition papers, although it is unclear what amendments she proposes.  (See Docket entry no. 30, at 1.)

Plaintiff appears to request leave to amend her complaint to assert a claim for breach of the Agreement.  This request is denied because any such claim must be brought in New Jersey.

The Agreement's forum selection clause provides that, "[t]he parties hereby agree to submit to the jurisdiction of the courts of the State of New Jersey and any actions relating to this Agreement must be instituted in the courts of the State of New Jersey."  (Docket entry no. 17-1, at ¶ 22.)

"A contractual forum selection clause is <u>prima</u> <u>facie</u> valid and enforceable unless it is shown by the challenging party to be unreasonable, unjust, in contravention of public policy, [or] invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court."  <u>Molino v. Sagamore</u>, 963 N.Y.S. 2d 355, 357 (App. Div. 2d Dep't 2013).  Moreover, New York courts enforce valid out of state forum selection clauses by dismissing any claims subject to the clause.  <u>Creative Mobile Tech., LLC, v. Smart Modular Technology</u>, 948 N.Y.S. 2d 375 (App. Div. 2d Dep't 2012).  Plaintiff has not proffered evidence of any fraud or coercion in the negotiation of the Agreement's forum selection clause.  She filed an earlier related suit in New Jersey, demonstrating that the forum is not inconvenient.  Therefore, the court will not grant Plaintiff leave to amend her complaint to assert the claim, as such amendment would place the claim in an improper forum, but the denial of leave to amend and the grant of summary judgment on the claims asserted here will be without prejudice to litigation of any breach of contract claims in New Jersey.

Plaintiff has also requested leave to amend her complaint to assert claims for fraud and negligent misrepresentation.  These requests are denied because, based on Plaintiff's

allegations and evidentiary proffers in her opposition to the summary judgment motion, the
amendments would be futile.

"Under New York law, to prevail on a fraud claim a plaintiff is required to prove:
(1) a material false representation or omission of an existing fact, (2) made with knowledge of its
falsity, (3) with an intent to defraud, and (4) reasonable reliance, (5) that damages plaintiff."
Dealtime.com v. McNulty, 123 F. Supp. 2d 750, 758 (S.D.N.Y. 2000) (internal quotation marks
omitted).  Plaintiff has simply failed to allege any of the elements of fraud in her complaint or
opposition, and most importantly, she has failed to allege that any representation to her made by
the Defendants was materially false.

"To state a claim for negligent misrepresentation under New York law, the
plaintiff must allege that (1) the defendant had a duty, as a result of a special relationship, to give
correct information; (2) the defendant made a false representation that he or she should have
known was incorrect; (3) the information supplied in the representation was known by the
defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely
and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  Anschutz
Corp. v. Merrill Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation marks
omitted).  Here, Plaintiff has not specified what, if any, representations she claims were
negligent on Defendants' part.

Plaintiff's papers could be construed liberally as alleging that the information Dr.
Guberman included in the July 1, 2009 letter, stating that she was in the PM&S24 Program from
July 1, 2007 through June 30, 2008, was a negligent representation.  Plaintiff cannot, however,
have reasonably relied on that information to her detriment because she knew the information

was inaccurate.  In fact, as Plaintiff acknowledged in the Agreement, she was terminated from the program in March 2008.

The proposed additional claims are thus baseless and leave to amend is denied as futile.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is treated as one for summary judgment and is granted in its entirety, except that Plaintiff is permitted to assert her claims for breach of the Agreement in a court of competent jurisdiction in New Jersey. Plaintiff's request for leave to amend her complaint is denied as futile.

This Order resolves docket numbers 28 and 30.  The Clerk of the Court is requested to enter judgement and close this case.

SO ORDERED.

Dated: New York, New York
        September 30, 2014

                                                              /s/ Laura Taylor Swain
                                                            LAURA TAYLOR SWAIN
                                                            United States District Judge

Copy mailed to:
Dr. Karen Tucker
One Erynwood Avenue
Marlton, NJ 08053